IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WANDA E., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 CV 2950 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Wanda E. ("Claimant") brings a motion for summary judgment to reverse or remand the final decision of the Commissioner of Social Security (the "Commissioner") to deny her claims for Disability Insurance Benefits ("DIBs") and Supplemental Security Income ("SSI"). The Commissioner brings a motion for summary judgment seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons stated below, Claimant's motion to reverse the Commissioner's final decision, (Dckt. #22), is granted, and the Commissioner's motion for summary judgment, (Dckt. #28), is denied.

**I.    BACKGROUND**

**A.    Procedural History**

On June 7, 2017, Claimant filed for SSI and DIBs, alleging disability beginning on February 4, 2016. (Administrative Record ("R.") 13; Dckt. #23 at 2). Claimant's application

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

was denied initially and upon reconsideration. (R. 13). Claimant filed a timely request for a hearing, which was held on March 7, 2019, before an ALJ. (R. 13, 35). On May 7, 2019, the ALJ issued a written decision denying Claimant's application for benefits. (R. 13-26). Claimant filed a timely request for review with the Appeals Council. On March 17, 2020, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-3). This action followed.

B.  The Social Security Administration Standard

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or

mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month durational requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled and no further analysis is required. If a listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), meaning her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If she cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

C.  **The Evidence Presented to the ALJ**

Claimant is a 53-year-old (at the onset of her alleged disability) former hair braider who previously filed applications for DIBs and SSI, which were denied in a final and binding decision dated February 3, 2016. (R. 13). She now seeks disability benefits with an onset date of February 4, 2016 for limitations stemming from "rheumatoid arthritis versus arthralgias," degenerative disc disease of the cervical spine, obesity, and asthma. (Dckt. #23 at 2, 14).

1.      **Evidence from Claimant's Treating Physicians**

Claimant's primary care physician, Jennifer Bellucci-Jackson, M.D., completed a multiple impairment questionnaire assessing Claimant's functional capabilities on January 25, 2018, after treating Claimant monthly over a period of four years.² (R. 1787-91). Earlier that month, on January 16, 2018, Claimant had an appointment with Dr. Bellucci-Jackson, who diagnosed her with rheumatoid arthritis with rheumatoid factor of multiple sites.³ (R. 1850-51). Dr. Bellucci-Jackson also noted that Claimant had no edema and a normal range of motion, she started Claimant on Norco tablets, and she instructed Claimant to take all of her medications and use a cane as directed. (*Id.*). Claimant's past medical history was noted as including hypertension, asthma, rheumatoid arthritis, spinal stenosis, and carpal tunnel. (R. 1851). In addition to the Norco, Claimant was prescribed other medications including gabapentin, melatonin, metoprolol tartrate, ergocalciferol, Flonase, methotrexate sodium, hydroxychloroquine sulfate, insulin, montelukast sodium, metformin, Norvasc, Lipitor, lisinopril, hydrochlorothiazide, and furosemide. (R. 1850). Claimant's body mass index ("BMI") was 39.75. (R. 1850-51).

On January 24, 2018, Claimant followed up with Dr. Bellucci-Jackson who noted that Claimant had limited range of motion secondary to pain in her back, no edema, a decreased

---

² The Court notes that Claimant was often seen by a nurse practitioner or physician assistant during her monthly appointments with Dr. Bellucci-Jackson's practice. (*See, e.g.*, R. 1853-55, 1856-57).

³ Rheumatoid arthritis is an autoimmune and inflammatory disease, whereby an afflicted person's immune system attacks healthy cells in their body by mistake, causing inflammation (painful swelling) in the affected parts of the body (most commonly, the joints in the hands, wrists, and knees). *See* Centers for Disease Control and Prevention, https://www.cdc.gov/arthritis/basics/rheumatoid-arthritis.html (last visited March 13, 2023). Rheumatoid arthritis "is a chronic condition, permanent in nature" and the impairments that result from it "cover a wide range and vary from individual to individual." *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 948 (7th Cir. 2000); *see also Salazar v. Astrue*, 859 F.Supp.2d 1202, 1227 (D.Or. 2012) ("Rheumatoid arthritis is a chronic disease meaning it can't be cured, and some people have intermittent symptoms or 'flares,' while others have ongoing symptoms that worsen over time.") (internal quotation marks omitted).

range of motion in her extremities, and was incapable of fine motor movements bilaterally. (R. 1847). Dr. Bellucci-Jackson again diagnosed rheumatoid arthritis and further determined that Claimant had carpal tunnel syndrome in both the left and right hands, type 2 diabetes mellitus without complications, mixed hyperlipidemia, essential hypertension, primary generalized osteoarthritis, a lesion of sciatic nerve on her left leg, and intervertebral disc degeneration in the lumbar region. (R. 1847-48). A cane was included with her list of current medications. (*Id.*).

In the questionnaire dated January 25, 2018, Dr. Bellucci-Jackson reported that Claimant had rheumatoid arthritis, diabetes, asthma, hyperlipidemia, bilateral carpal tunnel syndrome, hypertension, and lumbar disc disease with sciatica. (R. 1787, 1791). Dr. Bellucci-Jackson listed Claimant's primary symptoms as pain and numbness in both wrists, and pain in her knee, back, and shoulders. (R. 1788). She stated that in an eight-hour workday Claimant could sit less than one-hour and could stand and/or walk less than one-hour. (R. 1789). Dr. Bellucci-Jackson wrote numerous times that Claimant "cannot work." (R. 1789-90). She also found that it was medically necessary for Claimant to elevate both legs to waist level while sitting off and on all day. (R. 1789). Dr. Bellucci-Jackson further opined that Claimant cannot: (1) lift or carry as little as zero to five pounds; (2) grasp, turn, and twist objects bilaterally; (3) perform fine manipulation; or (4) reach bilaterally. (R. 1789-90). Dr. Bellucci-Jackson also stated Claimant would need to take unscheduled breaks to rest during an eight-hour workday. (R. 1790). Finally, Dr. Bellucci-Jackson concluded Claimant would be absent from work more than three times a month. (R. 1791).

At a follow-up appointment on February 15, 2018, Claimant had full range of motion with no edema in her ankle and foot, her Norco prescription was refilled, and a cane was again included in her list of medications. (R. 1844-45). On March 15, 2018, Claimant requested

5

another referral for pain management, she had no edema, normal range of motion and gait, and normal sensation and strength. (R. 1841). The cane was again listed in the list of current medications that Claimant was "taking," the Norco prescription was refilled, and she was started on other medications for her hypertension. (R. 1841-42). At her next monthly appointment, Claimant received medication refills, including Norco for her rheumatoid arthritis symptoms. (R. 1835). Claimant continued her roughly monthly visits to Dr. Bellucci-Jackson's practice, receiving refills for Norco, compression stockings, and a referral for pain management due to her chronic pain from rheumatoid arthritis. (*See, e.g.*, R. 1833, 1829, 1825, 1823).

In December 2018, after treating Claimant for four months, rheumatologist Robert Hozman, M.D. completed a multiple impairment questionnaire to assess Claimant's functional capabilities. (R. 1794-98). Dr. Hozman diagnosed rheumatoid arthritis, diabetes mellitus, and asthma. (R. 1794). He described Claimant's symptoms as joint pain and swelling and noted that she has pain in her hands, knees, hips, back, and shoulder. (R. 1795). In an eight-hour day, Dr. Hozman found that Claimant could sit for less than one hour and could stand and/or walk for less than one hour. (R. 1796). He further found that Claimant: (1) could not sit longer than five minutes before she needed to move around; (2) is unable to lift or carry zero to five pounds; (3) can grasp, turn, and twist objects bilaterally occasionally; (4) cannot perform fine manipulation; (5) can reach occasionally with her right arm but never with her left arm; and (6) would need to take unscheduled 30-minute breaks every 15 minutes during an eight-hour workday. (R. 1797). Finally, Dr. Hozman opined that Claimant would likely be absent more than three times a month as a result of her impairments. (R. 1798).

### 2. Evidence from Agency Physicians

State agency physicians James Hinchen, M.D. and Prasad Kareti, M.D. reviewed Claimant's file on July 26, 2017, and September 28, 2017, respectively. They both found, after reviewing the available medical evidence, that Claimant's only severe physical impairment was asthma. (R. 93, 104, 119, 132). Both physicians stated that the medical evidence of record indicated that Claimant had full range of motion in her back and all extremities, with normal gait, strength, and sensation. (R. 94, 120). Additionally, they both concluded that Claimant has no exertional limitations and no postural limitations but that she should avoid concentrated exposure to hot and cold temperature extremes, humid conditions, and respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. (R. 94-97, 105-08, 120-23, 133-36). Neither imposed any other functional limitations.

Claimant was also previously referred to consultative examiner Julia Kogan, M.D. for a physical examination that took place on November 1, 2014. (R. 350-58). Dr. Kogan concluded that Claimant had no difficulty standing, bending to 60 degrees, sitting or hearing, no difficulty with speech and gait, and that her fine manipulation and handling small objects was intact. (R. 357). In doing so, Dr. Kogan stated that Claimant reported she lived alone and was independent with her activities of daily living, including her personal grooming and hygiene needs. (R. 351). Upon examination, Claimant's lungs were clear to auscultation and percussion, there was no evidence of peripheral edema, she could ambulate 50 feet and her gait was normal without use of assistance device, her grip strength was full bilaterally, she had "minimal difficulty" lifting and carrying, her range of motion was normal except for the left shoulder, her lower extremities revealed full range of motion with no deformities bilaterally, and her spine was normal with no anatomic abnormality. (R. 351-57).

### 3. Evidence from Claimant's Testimony

Claimant appeared with counsel at the March 7, 2019 hearing before the ALJ. (R. 35). She testified that she lives alone in a subsidized apartment. (R. 40). Claimant has a car but does not drive because her hands cramp, and she does not believe she could move and stop quickly enough if necessary. (R. 41). Claimant last worked in 2014 as a hair braider. (R. 42). She stopped because her hands were "cramping up really bad" and she had carpal tunnel syndrome. (*Id.*). She also testified that she attempted to work in a factory job in 2014 as a packager but was sent home due to the pain and because she could not perform the job duties. (R. 62).

Claimant's physician, Dr. Bellucci-Jackson, prescribed braces for Claimant's wrists that she wears at night, however, Claimant has not seen a specialist for her carpal tunnel syndrome. (R. 43-44). Claimant testified that Dr. Bellucci-Jackson diagnosed her with rheumatoid arthritis, after which she began seeing Dr. Hozman, a specialist, who confirmed the diagnosis. (R. 45). Claimant first saw Dr. Hozman about three months prior to the hearing, sees him once a month, and was prescribed pain pills. (R. 47). Claimant also testified that she was prescribed a cane about a year prior to the hearing but only started using it within the last couple of months because her legs were getting bad and her knee "went out" a couple days before the hearing. (*Id.*). When asked about medical records indicating a normal gait, Claimant testified that she "can walk fine sometimes . . . but then sometimes I can't move." (R. 48).

Claimant further testified that she is trying to lose weight, stopped smoking cigarettes three months prior to the hearing, and stopped smoking marijuana almost two years prior to the hearing. (R. 48-49). Claimant was prescribed Norco for her pain and testified there was a point where she was taking more pills than prescribed because of the amount of pain she was in. (R.

8

50). Claimant was also prescribed muscle relaxers and testified that the medication she was prescribed for her rheumatoid arthritis "helps." (R. 50-51).

Claimant testified that her legs bother her the most, she experiences a constant aching in her left shoulder, a stabbing feeling in her lower back, and aching in her hips. (R. 51-52). She also testified that her ankles and feet swell, especially when she stands or walks too far. (R. 52). According to Claimant, the swelling was due to the rheumatoid arthritis and diabetes, for which she also takes an oral medication. (R. 52-53). Beyond the medications, Claimant stated that every day she lies down and puts her legs up to help alleviate the pain. (R. 53). She experiences drowsiness from her current medications and described falling asleep or dozing during the day, and difficulty sleeping at night due to her pain. (R. 55, 59-60). She also experiences bad days (three to four times per week) when she cannot get out of bed because the pain is so excruciating. (R. 61-62).

Claimant stated she can walk about a half block before stopping, she can stand for two minutes, and lift about five pounds. (R. 55). Her daughter comes over every morning so that Claimant can shower, as she previously fell in the tub, but she can bathe and dress herself. (R. 55-56). Claimant can cook and clean a little bit but stated that her daughter does most of the cooking, cleaning, laundry, and grocery shopping. (R. 56-57). Claimant described coughing all the time, and when walking, she "really can't breathe." (R. 59).

### 4. Evidence from Vocational Expert's Testimony

The Vocational Expert ("VE") testified that Claimant's past work as a hair braider is a sedentary job as defined, but light as performed, semiskilled with specific vocational preparation ("SVP") four. (R. 63). The VE also testified that an individual of Claimant's age (56 years old at the time of the hearing), education, and work experience who should avoid concentrated

9

exposure to dust, odor, fumes and gases, and temperature extremes and humidity could perform Claimant's past work as a hair braider. (R. 64). Such an individual could also perform other medium exertional jobs such as a dish washer, order picker, and dining room attendant. (*Id.*). If the individual were limited to sedentary work, however, and had to elevate her legs waist high several times a day, that person would not be able to perform Claimant's past work as a hair braider or any other work. (R. 65-67).

When asked by Claimant's attorney about the ramifications if the individual would be absent from work three times per month on a consistent basis, the VE testified that such a person would not be able to sustain employment. (R. 67-68). Similarly, a person that would need to take a 15-minute break every hour could not sustain employment. (R. 68). Finally, the VE testified that an individual limited to occasional use of their hands for fingering, feeling, and handling could not perform Claimant's past work as a hair braider. (*Id.*).

### D. THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of February 4, 2016. (R. 17). At step two, the ALJ determined that Claimant suffered from the severe impairments of "rheumatoid arthritis versus arthralgias;" degenerative disc disease of the cervical spine; obesity; and asthma. (*Id.*). The ALJ considered Claimant's type II diabetes mellitus, hypertension, and carpel tunnel syndrome but found these impairments to be non-severe. (R. 18).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including section 1.02 ("major dysfunction of a joint(s) due to any cause"), 1.04

("disorders of the spine"), 3.03 ("asthma"), or 14.09 ("inflammatory arthritis"). (R. 19). The ALJ further found that the Claimant's obesity did not contribute to a degree of impairment which would meet or medically equal one of the Listings. (*Id.*).

Before turning to step four, the ALJ determined that, Claimant had the residual functional capacity ("RFC"):

> To perform medium work as defined at 20 CFR 404.1567(c) and 416.967(c), subject to the following limitations: no concentrated exposure to temperature extremes (both hot and cold), humid conditions, or respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.

(R. 19). Based on these conclusions, the ALJ determined at step four that Claimant was capable of performing past relevant work as a hair braider. (R. 24). Even after assuming for the sake of argument that Claimant could not perform her past work, the ALJ found at step five that a sufficient number of jobs existed in the national economy that Claimant could perform given her RFC (including the positions of dishwasher, order picker, and dining room attendant). (R. 25-26). As such, the ALJ found that Claimant was not disabled. (R. 26).

## II.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul,* 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free

11

from legal error. *Scheck v. Barnhart,* 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, by making independent symptom evaluations, or by otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

Claimant urges this Court to reverse and remand the ALJ's decision to deny her an award of benefits , arguing that the ALJ failed to properly: (1) determine her RFC; (2) evaluate the medical opinion evidence; and (3) evaluate her subjective statements. Because Claimant's first argument has merit, the Court finds that a remand to the Social Security Administration is required and it will not address Claimant's remaining arguments. *See DeCamp v. Berryhill,* 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to assert them on remand.

### A. The ALJ's Failure to Build a Logical Bridge Between the Evidence and her RFC Determination Requires Remand.

Claimant argues that the ALJ failed to properly determine her RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). In other words, the RFC "is the most an individual can work despite his or her limitations or restrictions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995.)

As the Seventh Circuit has made clear:

> The relevant regulation, SSR 96-8p, lists seven strength functions that an ALJ must consider when assessing a claimant's RFC to work: lifting, carrying, sitting, standing, walking, pushing, and pulling. *Id*. at 34477. The regulation also requires an ALJ to describe 'how the evidence supports each conclusion [about a strength function], citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).' *Id*. at 34478.

*Jarnutowski*, 48 F.4th at 773-74. "An ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for [a court] to reverse an ALJ's decision." *Id.*; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Finally, "the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, … [and] [a] failure to fully consider the [i]mpact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Jarnutowski*, 48 F.4th at 774; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The question here is whether the ALJ's finding that Claimant had the RFC to perform medium work, with the noted limitations, is supported by substantial evidence. Under the

13

pertinent regulation, "medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Jarnutowski*, 48 F.4th at 774 (citing 20 C.F.R. § 404.1567(c)). Furthermore, medium work "'require[s] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to' the specified amounts." *Id.*, *quoting* Social Security Ruling ("SSR") 83-10. Claimant asserts that the ALJ failed to identify what evidence supports her finding that Claimant had the physical capacity to stand/walk for at least six hours in an eight-hour workday and to lift fifty pounds occasionally and twenty-five pounds frequently. The Court agrees.

When formulating Claimant's RFC, the ALJ considered – and rejected – the findings of four of the five physicians (Drs. Bellucci-Jackson, Hozman, Hinchen, and Kareti) who expressed an opinion as to Claimant's functional limitations, and she provided no indication as to her assessment of the opinion of the fifth (Dr. Kogan). (R. 20-22). In particular, the ALJ found that:

> The opinion evidence presented by Dr. Hozman and Dr. Bellucci-Jackson is neither consistent with medical treatment records nor persuasive. The extent of functional limitation described by both medical sources is quite overstated and less than plausible. . . . Furthermore, the unsubstantiated conclusion of Dr. Bellucci-Jackson that the claimant is unable to work at all and the unsubstantiated conclusions of both Dr. Bellucci-Jackson and Dr. Hozman that she would require unscheduled breaks throughout any workday and that she would likely be absent from work more than three times per month are speculative at best and lacking any support in the medical record. The claimant is not confined to a bed and she lives alone in her own residence so there is no logical basis for concluding that she could sit less than one hour in an eight-hour workday, that she could stand/walk less than one hour in an eight-hour workday, or that she is unable to lift even as little as 0-5 pounds.

(R. 21-22). The ALJ's rejection of the opinions of Drs. Hinchen and Kareti was less harsh but equally dismissive. (*See* R. 22 ("the conclusions of the DDD reviewing physicians, Dr. Hinchen and Kareti, that the claimant has no exertional limitations whatsoever may be somewhat optimistic in view of the diagnosed rheumatoid arthritis, degenerative disc disease of the cervical

14

spine, and obesity.")).[4]  Finally, the ALJ simply recapitulated Dr. Kogan's rather dated November 2014 findings[5] without expressing any view as to their validity.  (R. 20-21).

After having rubbished or simply ignored the physicians' opinions regarding Claimant's functional limitations, the ALJ articulated the basis of her RFC formulation as follows:

> After careful review of the entire record, I find the claimant retains the exertional capacity for 'medium' work as defined for Social Security purposes.  By definition, medium work involves lifting as much as 50 pounds occasionally and 25 pounds frequently.  Medium work can require standing and walking as much as six hours during any given eight-hour workday.  It may involve frequent bending and stooping.  Medium work may require upper extremity use for grasping, holding, and turning objects . . . .  A residual functional capacity for 'medium' exertion is found to depict a reasonable and accurate estimation of the claimant's actual capabilities.

(R. 22).  Notably, however, the ALJ did not cite to *any* specific evidence in the record to support her finding that Claimant has the capacity to engage in the standing/walking and lifting requirements of medium work.  This is reversible error.

Although an ALJ is entitled to reject medical opinion evidence and her "RFC assessment is not required to match the opinion of at least one physician of record," *Andrea H. v. Kijakazi*, No. 20 CV 1828, 2023 WL 2403138, at *4 (N.D.Ill. Mar. 8, 2023), she cannot pursue a Goldilocks approach by rejecting divergent opinions and simply splitting the difference between them to formulate an RFC that is "just right."  *See, e.g., Pflughoeft v. Saul*, No. 19-CV-1548, 2020 WL 6684529, at *3 (E.D.Wis. Nov. 12, 2020).  Instead, the ALJ must build an accurate and logical bridge from the record to its conclusion by specifying the evidence that supports her formulation of the RFC.  *See, e.g., Suide v. Astrue*, 371 Fed.Appx. 684, 690 (7th Cir. 2010); *Andrea H.*, 2023 WL 2403138, at *4 ("At a minimum, the ALJ is required to provide adequate

---

[4] As stated above, the ALJ found that each of these conditions was a "severe impairment." (R. 17).

[5] Dr. Kogan performed her 2014 consultative examination of Claimant during the consideration of Claimant's first application for benefits.  (R. 18).

15

citation to the record in support of the RFC [she] constructed.") (internal quotation marks omitted); *Pflughoeft*, 2020 WL 6684529, at *3 (the ALJ "must still connect its RFC conclusion with the medical evidence"); *Desiree B. v. Saul*, No. 18-CV-8129, 2019 WL 6130814, at *6 (N.D.Ill. Nov. 19, 2019) ("By rejecting all medical opinions of records, the ALJ created an evidentiary deficit which he needed to remedy by pointing to specific evidence to substantiate his conclusion.").

In this case, the ALJ cited to the "entire record" rather to any specific evidence (medical or otherwise)[6] to support the RFC. This is insufficient. The ALJ's adoption of an RFC with limitations less restrictive than Claimant's treating physicians' opinions but more restrictive than the state agency physicians' opinions "strongly suggests that the ALJ assessed a middle-ground without a medical basis." *Andrea H.*, 2023 WL 2403138, at *5. This is forbidden as it is well-settled that the ALJ "is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record." *Suide*, 371 Fed.Appx. at 690; *Andrea H.*, 2023 WL 2403138, at *4. Because the ALJ failed to build an "accurate and logical bridge" from the evidence to her conclusion that Claimant could perform medium work, *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018), the ALJ's RFC is not supported by substantial evidence and a remand is required.

---

[6] In addition to the medical opinion evidence, an ALJ can also rely on "detailed medical records, the claimant's testimony about h[er] physical abilities, and the claimant's work history to reach h[er] RFC determination." *Andrea H.*, 2023 WL 2403138, at *6.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment, (Dckt. #22), is granted and the Commissioner's motion for summary judgment, (Dckt. #28), is denied.

**ENTERED:   March 31, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**